UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH SWANSON,

       Petitioner,

v.                                     Case No. 2:13-cv-368
                                     HON. ROBERT HOLMES BELL

CATHERINE BAUMAN,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

       Petitioner Kenneth Swanson filed this petition for writ of habeas corpus challenging his jury conviction for three counts of first-degree criminal sexual conduct (CSC) and one count of second-degree CSC. Petitioner was sentenced to concurrent prison terms of 140 to 240 months for each of the first-degree CSC convictions and 120 to 180 months for the second-degree CSC conviction. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision.

       Petitioner alleges that:

I. Defense counsel was constitutionally ineffective for failing to tell his client that the testimony of the complainant alone, if believed, would be enough to convict him; counsel's advice misled defendant and caused him to waive his right to testify.

II. The trial court abused its discretion and denied Petitioner his right to fair and impartial jury by not dismissing a juror that the court knew or should have known was biased. Petitioner was denied his right to the effective assistance of trial counsel when counsel failed to dismiss that juror for cause or to dismiss her using a peremptory challenge.

III. Petitioner was unfairly prejudiced when the trial court admitted into evidence transcripts of a recording that was not stipulated to, had not been submitted to an independent determination by the trial court, and where both sides did not submit transcripts. Petitioner was denied his right to effective assistance of trial counsel when counsel failed to challenge this evidence.

IV. Prosecutorial misconduct deprived Petitioner of his right to a fair trial where prosecutor mischaracterized the evidence to discredit a defense witness in his closing argument. Petitioner was denied his right to effective assistance of trial counsel when counsel failed to object to this micharacterization.

V. Petitioner was denied his right to effective assistance of trial counsel when counsel failed to call a witness that may have supported Petitioner's defense and discredited the victim.

VI. The cumulative effect of the foregoing errors and omissions deprived Petitioner of numerous constitutional rights and requires that a new trial be ordered in this matter.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is

contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160

F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of

the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the

Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is

"contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite

to that reached by this Court on a question of law or if the state court decides a case differently than

this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be

deemed an "unreasonable application" of clearly established federal law "if the state court identifies

the correct governing legal principle from this Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state

adjudication to be "unreasonable" "simply because that court concludes in its independent judgment

that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the

habeas court should not transform the inquiry into a subjective one by inquiring whether all

reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at

410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is

whether the state court's application of clearly established federal law is "objectively unreasonable."

*Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,*

160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual

findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This

presumption has always been accorded to findings of state appellate courts, as well as the trial court.

*See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Petitioner claims that his trial counsel was constitutionally ineffective for failing to tell his client that the testimony of the complainant alone, if believed, would be enough to convict him, and counsel's advice misled defendant and caused him to waive his right to testify. The Michigan Court of Appeals rejected this claim stating:

> Defendant first argues that he was provided ineffective assistance of counsel as a result of trial counsel's failure to advise him that the victim's testimony, if believed, would be sufficient to convict him. Under both the federal and state constitution, a defendant in a criminal case has a right to the assistance of adequate and effective counsel. US Const, Am VI; Const 1963, art 1, § 20. To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below professional norms, that there is a reasonable probability that, but for the error, the result of the proceedings would have been different, and that the resultant proceedings were fundamentally unfair or unreliable. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007); *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Where, as here, there has been no *Ginther* hearing, ineffective assistance of counsel claims are preserved only to the extent that the mistakes made by counsel are apparent on the record. *People v Wilson*, 196 Mich App 604; 493 NW2d 471 (1992).
>
> Here, the prosecutor informed potential jurors, in defendant's presence, that the victim's testimony would be sufficient to support a conviction if the jury accepted it as true. Accordingly, even if counsel did not personally advise defendant, the failure to repeat it would not fall below a professional norm. Moreover, there is no indication that the outcome would have been different if defendant had testified. Defendant asserts that he would have testified that he was in bed nude when his granddaughter came into the room and jumped on the bed, that he hugged her, tickled her, and basically

frolicked around in a normal grandfatherly manner, and that although he physically touched her while doing so, it was not in a sexual or inappropriate manner. These representations are almost entirely duplicative of the statements made by defendant in the recorded phone call that was played for the jury. Moreover, they can hardly be described as exculpatory. As such, it is highly unlikely that the outcome of the trial would have been changed had defendant testified.

Michigan Court of Appeals Opinion, PageID.258-259, ECF No. 7-7 (footnote omitted).

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. *See also Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (holding that *Strickland* requires a reviewing court not only "to give [the] attorneys the benefit of the doubt . . . but to affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did").

- 5 -

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Pinholster*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA") (citing *Harrington*, 562 U.S. at 102).

Petitioner argues that trial counsel never discussed with him whether he should testify. Petitioner states that he first learned he could be convicted on the basis of the victim's testimony alone when the jury instructions were read. The record shows that, during his jury trial, Petitioner heard at least two times from the prosecution that he could be convicted on the testimony of the victim alone before he heard the judge make this statement during jury instruction. The prosecutor told the jurors that they could convict Petitioner on the basis of the victim's testimony alone even before jury selection began. PageID.183, ECF No. 7-4. Petitioner was present at that time. PageID.175, ECF No. 7-4. The prosecutor repeated her statement to the jury before the jury instructions were read. PageID.237, ECF No. 7-5. Once again, Petitioner was present at that time. PageID.233, ECF No. 7-5. Therefore, Petitioner's claim that he was unaware of this fact prior to the jury instruction is not supported by the record before this Court.

Petitioner testified that he and counsel had "discussed . . . at some length" whether he should testify on his own behalf. PageID.233, ECF No. 7-5. He also testified that the decision

not to testify on his own behalf was his and his alone, uninfluenced by counsel. *Id.*[1]  Petitioner's

brief does not adduce any evidence showing that his trial testimony was erroneous.  Petitioner claims

that, but for counsel's unprofessional errors, he would have given "important testimony" during trial.

PageID.20, ECF No. 1-1.  His affidavit attached to his brief indicates what that testimony might have

been (PageID.27, ECF No. 1-1):

> I was in bed, I normally sleep in the nude.  My granddaughter came
> into the room and jumped upon the bed.  I hugged her, tickled her,
> and basically frolicked around in a normal grandfatherly way, i.e., in
> a loving manner, not in any sexually diverse manner.  Yes, I did touch
> her, I physically touched her when I hugged her and tickled her, but
> in no way did I touch her in an inappropriate manner that would
> constitute molestation.

This is essentially what the jury heard when the recording of a phone conversation between

Petitioner and his daughter, the victim's mother, was played during trial.  PageID.221, ECF No. 7-4.[2]

In that taped conversation, Petitioner stated: "I was naked in bed.  I put my arms around her, I

wrestled with her, I love her to death.  I did not put my finger in her, I didn't molest her in that way

at all.  And that's the truth."  PageID.281, ECF No. 7-7.  A little later in that conversation, when

confronted by his daughter's statement, "Dad, you touched her inappropriately," Petitioner replied:

"OK, OK, I touched her.  But, I did not in any way stick anything in her.  If that was molestation,

---

[1] Petitioner's admissions at trial agree with counsel's 2012 affidavit where he stated that he informed Petitioner "early on in my representation of him, that . . . the testimony of a victim need not be corroborated in prosecutions for criminal sexual conduct."  He also recalled telling Petitioner that "we faced 'an uphill battle' because the victim's testimony need not be corroborated."  He also recalled that Petitioner "told me over and over again that he did not want to testify at his trial." PageID.335-336, ECF No. 7-7.

[2] This phone conversation apparently took place after Petitioner had moved to Arizona and after the police had talked to him by phone on the allegations against him.  It was designed by police investigators to get Petitioner to make incriminating admissions.  PageID.220-221, ECF No. 7-4.

then I'm sorry.  I run around the house nude all the time anyway."  PageID.282, ECF No. 7-7.  Thus, Petitioner's "important testimony" would have been redundant.

Petitioner also states in his brief that testifying at trial would have allowed him "to explain his answers to [his daughter] in the recorded telephone call."  At the beginning of that taped call, Petitioner's daughter stated that in order to decide whether she "should press charges or not" against him, she would have to know why Petitioner did what he did.  Petitioner stated: "Well, I can blame it on the Paxil and that's the only thing I can blame it on because nothing's ever happened like that before.  Ah, but, do what makes you feel right.  I'll always love ya.  Ah, like I said, I'm not gonna go to jail.  I'm gonna move down to the tip of Baja [California, Mexico].  I won't never come back to Michigan."  PageID.281, ECF No. 7-7.

Moreover, after remarking, "So cops wanna talk to me, they want a statement I told them I was out of the State.  I'm on vacation but that's ...... I'm just gonna go to Mexico and live." Petitioner also stated: "So, if they want me, they can come to Mexico.  I'm gonna go down to Mexico, put my feet in the sand, my ass in a chair, and a beer in my hand.  I have no more responsibility.  So, apparently I've fucked everybody's lives up, my own and your mom's.  So, well, I'll let God be my judge.  But I'll always love ya."  Replying to his daughter's statement, "Well, I can assure you nobody's life is as fucked up as mine."  Petitioner stated: "Yeah.  I'm sorry." PageID.281-282, ECF No. 7-7.

When his daughter mentioned that Child Protective Services "visits my house once a week.  They want to take my children from me," Petitioner asked: "Why do they want to take them from you?"  She answered in general terms: "Oh, because this is just a mess, all of it's a mess, ... my whole entire life, is being threatened to be taken away from me.  All for something I didn't do." Petitioner immediately asked: "*What did [the victim], what did [the victim] say to the .......*

*services*"?  In keeping with the purpose behind this phone call, his daughter responded evasively: "I can't even repeat what I heard.  I was there. I was there.  I can't even repeat it or I'll throw up.  I just, I just, I just needed to talk to you."  A little later, Petitioner asks, "So, it's better that I just go to Mexico, right?"  When his daughter says, "Dad, I don't know," he says: "I mean, yeah, I could sell the house [in Michigan], get a lawyer and go to court, but your mom doesn't want me to . . . [b]ecause she doesn't want, *she doesn't want to live with me in jail*." PageID.282, ECF No. 7-7 (emphases added).

> Petitioner's affidavit paints quite a different picture (PageID.27, ECF No. 1-1):
>
>> I apologized to my daughter, not for anything wrong that I did to her or my granddaughter, but because of all the problems that she was going through in her life.  The apology was being made from a father to a daughter for I love her. . . . I thought it better for me to move out of this country/state rather than have her place my granddaughter upon the stand to make any kind of statements, and that this was the reason why the rest of the family was turned against her. . . . I tried to have my daughter committed for her drug and alcohol abuse prior to her coming up with the story, which was the primary reason why her life was in turmoil and the Child Protection Services kept coming to her house.

Petitioner does not offer any evidence to corroborate these bare assertions unsupported by the record before this Court.  His assertions, therefore, are unconvincing and insufficient to "explain" away his incriminating statements in the taped phone call, especially since defense counsel already brought up Petitioner's daughter's alleged drug problems in his opening statement and Petitioner's wife testified that her daughter "takes a lot of pills."  PageID.205, 225, ECF No. 7-4.

> Thus, given the testimony Petitioner was allegedly prepared to give and given his explanations for the incriminating evidence before the jury, Petitioner has not presented clear evidence showing that counsel's actual trial strategy of seeking to discredit the victim, (PageID.336,

ECF No. 7-7) instead of relying on Petitioner's testimony, was unreasonable under those circumstances or prejudicial to Petitioner.     In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

       Petitioner claims that the trial court abused its discretion and denied Petitioner his right to a fair and impartial jury by not dismissing a biased juror.  Petitioner also claims that he received ineffective assistance of trial counsel when counsel failed to dismiss that juror for cause or use a peremptory challenge.  The Michigan Court of Appeals rejected these claims stating:

> Defendant argues that the trial court erred by failing to dismiss juror number six during jury selection.  Juror number six informed the court that her now father-in-law had been previously tried for assaulting her now stepdaughter.  She initially indicated that she was biased, but after instruction by the trial court and questioning by both the prosecution and the defense, she testified that she could weigh the evidence impartially and refrain from applying any feelings about the prior case to the present case.

> Under MCR 6.42(D)(2), a trial court must excuse a juror if the court finds that a ground for challenging the juror is present.  Among those grounds is the presence in the juror's mind of a bias or state of mind that would prevent the juror from rendering a just verdict. MCR 2.511(D)(2) and (3).  Juror number six repeatedly affirmed that she would be able to view the instant case impartially and evaluate it solely on the merits.  Accordingly, there was no error in failing to dismiss juror number six for cause.

> Defendant also argues that his trial counsel was ineffective for failing to exercise a challenge to dismiss juror number six.  First, he argues that counsel's failure to exercise a challenge for cause fell below reasonable professional norms.  As noted above, however, a challenge for cause would likely have been meritless, as the juror repeatedly disavowed bias and the trial court declined to excuse her on its own motion.  Accordingly, counsel's failure to make a challenge for cause

was not unreasonable.  Further, counsel's decision not to exercise a preemptory [sic] challenge could be viewed as a matter of trial strategy.  To the extent there was a concern with bias, counsel might have perceived that the bias would be in favor of the grandfather and/or that the juror would look for exacting proofs.  Moreover, defense counsel did exercise preemptory [sic] challenges on other prospective jurors.  Counsel is given wide discretion in matters of trial strategy, and defense counsel's decision to exercise his preemptory [sic] challenges on jurors other than juror number six was not objectively unreasonable.  *People v Odom*, 276 Mich App. 407, 415; 740 NW2d 557 (2007).

Additionally, defendant cannot show that, but for counsel's failure to challenge juror number six, there is a reasonable probability that the result of his trial would have been different.  There was direct testimony from the victim accusing defendant of sexual abuse, and the jury listened to a recorded telephone call in which defendant denied molesting the victim but admitted to touching, embracing and wrestling with the victim while he was naked in his bed.  Given the weight of this evidence, defendant cannot show prejudice.

Michigan Court of Appeals Opinion, PageID.259-260, ECF No. 7-7.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."  U.S. Const. amend. VI.  The right to an impartial jury is applicable to the states via the Fourteenth Amendment.  *See Turner v. Louisiana*, 379 U.S. 466, 471-72 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  Further, "due process alone has long demanded that, if a jury is to be provided the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment."  *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted).

To this end, "[a]ll persons otherwise qualified for jury service are subject to examination as to actual bias."  *United States v. Wood*, 299 U.S. 123, 133 (1936); *see Mu'Min v. Virginia*, 500 U.S. 415, 422 (1991) (holding "suitable inquiry . . . permissible in order to ascertain

whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried").  "*Voir dire* plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).  "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."  *Mu'Min*, 500 U.S. at 431.

The Supreme Court has accorded "broad discretion" to trial judges conducting *voir dire* examinations.  *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009) (quoting *Mu'Min*, 500 U.S. at 423).  The relevant question for challenging juror impartiality is "did the juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestations of impartiality have been believed."  *Holder*, 588 F.3d at 339  (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)).

Identifying factors demonstrating the credibility of such protestations, the Sixth Circuit noted that a prospective "juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias."  *Holder*, 588 F.3d at 339.  Rather, this expression of doubt must be reviewed within "the totality of the juror's statements."  *Id.* at 340.  For example, the court, prosecution, or counsel may have rehabilitated the prospective juror in question by asking clarifying follow-up questions, thereby "establishing record support for the claim that [a prospective juror] was able to cast aside her opinion and render a verdict based on the evidence presented in court."  *Hughes v. United States*, 258 F.3d 453, 459 (6th Cir. 2001); s*ee Skilling v. United States*, 561 U.S. 358, 394-95 (2010) (holding that when a district court, after reviewing juror questionnaires, "followed up with each [prospective juror] individually to uncover concealed biases," it had created "a sturdy foundation to assess fitness for jury service").

A trial judge's decisions regarding a prospective juror's bias and impartiality are factual determinations that are presumed to be correct under AEDPA. *Holder*, 588 F.3d at 339; s*ee Patton*, 467 U.S. at 1036. A state court decision based on a factual determination will not be overturned on factual grounds unless it was unreasonable in light of the evidence presented in the state court proceeding and not simply erroneous or incorrect, which represents "a substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *see Young v. Hofbauer,* 52 F. App'x 234, 237 (6th Cir. 2002) (describing "objectively unreasonable" as the proper threshold for habeas review of factual determinations). The presumption of correctness is rebuttable only by clear and convincing evidence. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74.

One of defense counsel's chief responsibilities "is to protect his client's constitutional rights to a fair and impartial jury by using *voir dire* to identify and ferret out jurors who are biased against the defense." *Holder*, 588 F.3d at 338. However, counsel's actions during *voir dire* are considered part of trial strategy and, thus, entitled to deference under *Strickland*. *Id.* To challenge counsel's decisions in the *voir dire* process, Petitioner must establish "actual bias," showing "through a review of *voir dire* testimony that a 'fair trial was impossible.'" *Id.* at 339. Impaneling a biased juror creates a presumption of prejudice under *Strickland*. *Id.* at 338. *See Hughes*, 258 F.3d at 458 (holding that "[Petitioner] must show that the juror was actually biased against him").

Petitioner, specifically, argues that the court should have dismissed Juror # 6 after she admitted in her *voir dire* that her stepdaughter had been the victim of her grandfather's CSC. PageID.191, ECF No. 7-4. She also stated that while she was "there," she "wasn't involved" in the trial that ended in a hung jury twice. *Id.* The record shows the following exchange between the judge and the prospective juror, Ms. Mullins (PageID.191-192, ECF No. 7-4):

- 13 -

THE COURT: . . . Would there be anything about that experience that might cause you to be biased towards either side here today?

PROSPECTIVE JUROR MULLINS: Yes.

THE COURT: If I were to tell you that you need to set aside that bias and judge this case fairly and impartially only on the evidence that comes before you would you be able to do that?

PROSPECTIVE JUROR MULLINS: Prob'ly.

THE COURT: I'm sorry?

PROSPECTIVE JUROR MULLINS: Prob'ly, yes.

THE COURT: All right.  Well, we need to have you do better than probably.  Do you think that - -

PROSPECTIVE JUROR MULLINS: I don't know for sure if I could.

THE COURT: Do you have any problem presuming the defendant here to be innocent?

PROSPECTIVE JUROR MULLINS: Yes.

THE COURT: You have a problem with that?  I've already instructed you that he is presumed to be innocent.  You have trouble following that instruction?

PROSPECTIVE JUROR MULLINS: (No verbal response)

THE COURT: Pardon me?

PROSPECTIVE JUROR MULLINS: No.

THE COURT: Well, do you think that you'd need some evidence - - he needs to produce some evidence to overcome whatever you're feeling?

PROSPECTIVE JUROR MULLINS: Yes.  I'd prob'ly have to hear the testimony.

THE COURT: All right.  Do you think you can be fair to both sides here?

PROSPECTIVE JUROR MULLINS: Yes.

THE COURT: Do you think you can judge this case just on the evidence that comes before you?

PROSPECTIVE JUROR MULLINS: Yes.

THE COURT: And, not relate back to anything about the case that your husband and yourself were involved in?

PROSPECTIVE JUROR MULLINS: Yes.

The prosecutor, Ms. Morton, followed up on this issue with Ms. Mullins (PageID.192-193, ECF No. 7-4):

MS. MORTON: Okay, I want to talk a little bit more about the situation with your stepdaughter.  You said you were there in support of your husband.

- 14 -

PROSPECTIVE JUROR MULLINS: Yes. I wasn't actually with him or didn't even know them when it happened. They were just going to court still.

MS. MORTON: So, you were not - - she was not your stepdaughter then?

PROSPECTIVE JUROR MULLINS: No.

MS. MORTON: Okay. How did you know him then?

PROSPECTIVE JUROR MULLINS: I didn't know him when it happened.

MS. MORTON: Oh. You knew - - but you knew him when it went to court.

PROSPECTIVE JUROR MULLINS: Yes.

MS. MORTON: Were you married when it went to court?

PROSPECTIVE JUROR MULLINS: No.

MS. MORTON: Okay. And, who was he there in support of?

PROSPECTIVE JUROR MULLINS: He was the witness. He was - - it supposedly happened when he was there watching her.

MS. MORTON: Okay. You've kind of given answers back and forth. When asked can you set that aside, no. But, if the Judge tells you to set it aside, yes.

PROSPECTIVE JUROR MULLINS: Yeah, I can. I have strong feelings toward that case particularly. So, I don't know exactly who to believe in that case.

MS. MORTON: Okay. So, your feelings are limited and strong about that case.

PROSPECTIVE JUROR MULLINS: Yes.

MS. MORTON: But, understand this has nothing to do with that.

PROSPECTIVE JUROR MULLINS: Yes.

MS. MORTON: And, so you think - - I mean, in all honesty you can sit here and listen to the witnesses and nothing about that case or your strong feelings on that case would come to play here?

PROSPECTIVE JUROR MULLINS: No.
Cathy

Petitioner's trial counsel, Mr. Taylor, followed up on this matter as well (PageID.193, ECF No. 7-4):

MR. TAYLOR: Well, I guess I just want to ask that question definitely of you. You're obviously very concerned about that history of that case. How long ago was it?

PROSPECTIVE JUROR MULLINS: About thirteen years ago.

MR. TAYLOR: Okay. And it's still pretty fresh to you it seems.

PROSPECTIVE JUROR MULLINS: It's just 'cause it was never resolved.

MR. TAYLOR: It's an unresolved issue with you?

PROSPECTIVE JUROR MULLINS: With court, with me, yes.

MR. TAYLOR: In your mind, right?

- 15 -

> PROSPECTIVE JUROR MULLINS: Yes.
> MR. TAYLOR: Are you going to be able to listen to the facts in this
>    case and set that aside?
> PROSPECTIVE JUROR MULLINS: Yes.
> MR. TAYLOR: You're sure?
> PROSPECTIVE JUROR MULLINS: Yes.

Thus, while Juror # 6 at first had expressed her concern about being biased and presuming Petitioner innocent, the record shows that her involvement with her now father-in-law's CSC affecting her now stepdaughter was rather remote: The trial happened about thirteen years before Petitioner's jury trial; she did not know the victim in that case when the crime happened; she was not married to the victim's father during trial; her feelings were strong toward that particular case that remained unresolved. Furthermore, the court, the prosecutor, and defense counsel engaged in extensive rehabilitation that resulted in Juror # 6 giving the proper assurances that the court found credible. Other prospective jurors were excused by the court and defense counsel when concerns of actual bias were raised. The court removed a prospective juror for cause when he could not be rehabilitated after stating that testimony given by law enforcement deserved to be given more weight in a trial. PageID.196, ECF No. 7-4. Petitioner's defense counsel exercised a peremptory challenge to remove Juror # 7, a high school teacher, who was unable to rule out that she knew the victim or other family members. PageID.193, ECF No. 7-4.

Thus, Petitioner has failed to show that the trial court acted unreasonably when it seated Juror # 6 after extensive rehabilitation. Petitioner has also failed to demonstrate that defense counsel's failure to challenge the seating of Juror # 6 was beyond the scope of sound trial strategy and resulted in seating a juror who was actually biased against him. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of

the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he was unfairly prejudiced when the trial court admitted into evidence a transcript of a recording that was not stipulated to by the parties and that had not been subjected to an independent determination by the court, and where both sides did not submit transcripts. Petitioner also claims that he was denied his right to effective assistance of trial counsel when counsel failed to challenge this evidence. The Michigan Court of Appeals rejected these claims stating:

> Defendant next argues that the trial court erred by admitting the transcript of the recorded telephone call between defendant and the victim's mother. The recording and transcript were both introduced into evidence without objection. An unpreserved claim of non-constitutional error is reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant bears the burden of demonstrating that it is more probable than not that the error affected the outcome of the trial, and even on such a showing, reversal is only warranted if, in the reviewing court's discretion, the error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763; *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008).
>
> Defendant asserts that the trial court failed to follow the appropriate procedure for the admission of transcripts as set forth by this Court in *People v Lester*, 172 Mich App 769; 432 NW2d 433 (1988). In *Lester*, this Court found a preference for transcripts where both parties stipulated to the accuracy, but in the absence of such a stipulation held that the transcriber and the trial court should both verify the accuracy of the transcript. *Id*. at 776. Here, the record does not show that the trial court verified the accuracy of the transcript, and the secretary that made the transcription did not testify. However, both the victim's mother and the detective testified that they had reviewed the transcript for accuracy and defendant expressly said that he had no objection to its admission. Given that the record does not reflect any inaccuracy in the transcript and the fact that defendant waived objection to its admission, it would be impossible

to determine that the admission of the transcript was plain, outcome determinative error that resulted in the conviction of an actually innocent defendant.

Defendant further argues that his trial counsel was ineffective for failing to object to the admission of the transcript. However, since there is absolutely no evidence that the transcript of the recorded telephone call was inaccurate, there is no basis for finding that it was objectively unreasonable for trial counsel to choose not to object to the admission of a presumably accurate transcript. Accordingly, the first prong of the ineffective assistance test is not met in this case. Further, defendant has not shown prejudice. There is no claim that the transcript was erroneous, and the jury had the opportunity to listen to the recording itself, as well as read the transcript provided. Thus, there is no reasonable probability that, had trial counsel objected, defendant would have been acquitted.

Michigan Court of Appeals Opinion, PageID.260, ECF No. 7-7.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*,

144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  However, there may be "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question."  *Lee v. Kemna*, 534 U.S. 362, 376 (2002).  The Supreme Court has repeatedly recognized that "the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question."  *Id.* at 375 (internal quotations omitted).  *See Cone v. Bell*, 556 U.S. 449, 465 (2009).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

At Petitioner's trial, when the prosecution moved to admit proposed Exhibits 1 and 2 into evidence, defense counsel stated, "No objections."  Accordingly, those two exhibits were admitted.  PageID.221, ECF No. 7-4.  Since the Michigan Court of Appeals adopted the Sixth Circuit's standard regarding the admission of transcripts of audio recordings at trial in *People v. Lester*, 172 Mich. App. 769, 776 (1988) (quoting *United States v. Robinson*, 707 F.2d 872, 878-79 (6th Cir. 1983)), counsel could challenge the admission of this evidence because the record does not

suggest that both parties stipulated to its accuracy, that the transcriber verified it, or that the court had made an independent pretrial determination of the accuracy of the transcripts. PageID.221, ECF No. 7-4.

Since counsel did not assert this right at trial, it was not preserved for appellate review under Michigan procedural rules. The Michigan Court of Appeals, therefore, reviewed Petitioner's claim only for plain error. Thus, Petitioner's claim is procedurally defaulted, because the Sixth Circuit recognizes "the procedural rule requiring objection below to preserve an issue on appeal" as "both firmly established and regularly followed by Michigan state courts." *Morgan v. Lafler*, 452 F. App'x 637, 647 (6th Cir. 2011).

Petitioner acknowledged that "this issue itself can be procedurally defaulted." PageID.361, ECF No. 7-7. Therefore, he raised a claim of ineffective counsel to satisfy the "cause" prong in order to overcome a procedural default. *Id.* However, Petitioner fails to show that counsel was ineffective by failing to object to the admission of the transcript into evidence. Petitioner does not claim that the transcript was inaccurate or unreliable. Petitioner claims that the transcript was "ambiguous evidence," because the transcript did not tell the jury "that there were previous calls made" between the victim's mother and Petitioner so the jury was ignorant as to "what the phone conversation is dealing with."[3] Petitioner claims that this, not any inaccuracies within the transcript itself, "makes the transcripts seem very damning." PageID.364, 366 ECF No. 7-7.

---

[3] Contrary to Petitioner's assertion, the transcript strongly suggests that the recorded call was not the first pertinent conversation between him and his daughter: When his daughter stated: "I don't know if I should press charges or not," Petitioner did not seem surprised but simply replied by asking, "Where's it stand right now?" Petitioner also indicated that he had already "tried to answer that question" as to why he had done what he had done. PageID.280-281, ECF No. 7-7. The transcript thus clearly suggests that this call was part of an ongoing discussion of whether the mother should pursue charges against Petitioner. However, this circumstantial evidence proved insufficient to raise a reasonable doubt in the mind of even one juror.

However, this was precisely the strategy that defense counsel adopted in his closing argument to create reasonable doubt regarding the prosecution's interpretation of the taped conversation.  PageID.237, ECF No. 7-5 (telling the jury specifically "you have to read [the transcript] with an eye of this isn't the first call").  Yet this strategy failed to produce the intended result and, thus, did not result in Petitioner's acquittal.  Therefore, Petitioner cannot claim that counsel's conduct was outside the wide range of competent professional assistance and sound trial strategy when Petitioner adopted that very same strategy on appeal and in his petition for habeas relief.  As pointed out earlier, Petitioner, in his affidavit to this Court, reiterated some incriminating content of the transcript, claiming that he would have so testified had he been allowed to speak by counsel.

Alternatively, Petitioner's request for habeas relief based on this claim should be denied because, since counsel intentionally relinquished the right to challenge the evidence, he waived it.  Thus, any claims of error regarding this issue have been extinguished.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) (defining waiver as the "intentional relinquishment or abandonment of a known right" that "extinguish[es]" any errors affecting a substantial right), *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000); *Morgan*, 452 F. App'x at 646 n.3.  Therefore, in the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he was deprived of his right to a fair trial when the prosecutor, in her closing argument, misrepresented the testimony of Petitioner's wife at trial.  Further, Petitioner

asserts that defense counsel was ineffective for not objecting to this misrepresentation.   The

Michigan Court of Appeals rejected this claim stating:

> Defendant also contends that the prosecutor deliberately misrepresented evidence during closing arguments.   Remarks made by the prosecution are subject to numerous limitations in order preserve [sic] a defendant's right to a fair and impartial trial.   Among these limitations is a prohibition on statements that are unsupported by the evidence.   *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000), overruled in part on other grounds *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).   During closing argument, the prosecutor stated that defendant's wife spoke of a confrontation between defendant and the victim's mother after Christmas of 2009, but not about the allegations at issue in this case.   The record reflects that defendant's wife merely testified that she saw the victim's mother at that time, not that there was a confrontation.   However, defendant failed to object.   While this is a mischaracterization of the testimony, it is on a minor point and the jury was properly instructed that closing arguments are not evidence.   Jurors are presumed to follow their instructions.   *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).   Accordingly, defendant's substantial rights were not affected.

> Defendant also argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument.   However, trial counsels' performance did not fall below professional norms.   The prosecution's misstatement was minor, and declining to call attention to the misstatement by way of an objection may have been a legitimate trial strategy.   Further, due to the proper instruction of the jury and the minor nature of the misstatement at issue, defendant has not and cannot show a reasonable probability that the outcome of his trial would have been different had trial counsel objected.

Michigan Court of Appeals Opinion, PageID.261, ECF No. 7-7.   While Petitioner did not raise this

issue at trial and, thus, could have been procedurally barred from raising this claim, the state

appellate court ruled on the merits.   Therefore, Petitioner's claim of prosecutorial misconduct is not

procedurally barred.

The scope of habeas review of prosecutorial misconduct is narrow.   A petitioner must

do more than show erroneous conduct.   "The relevant question is whether the prosecutor's comments

'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)), *cert. denied*, 114 S. Ct. 1317 (1994). The Sixth Circuit has established a number of factors a habeas court must consider when weighing the extent of prosecutorial misconduct: (1) the extent to which the claimed misconduct tended to mislead the jury and prejudice the petitioner; (2) whether it was isolated or extensive; (3) whether the claimed misconduct was deliberate or accidental; (4) the strength of the competent proofs tending to establish guilt. *Serra*, 4 F.3d at 1355-56 (quoting *Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*)). Additionally, the trial judge's giving of curative instructions is relevant when determining whether fundamental fairness was denied. *Serra*, 4 F.3d at 1356. *See also Darden*, 477 U.S. at 181-82 and *DeChristoforo*, 416 U.S. at 644.

At Petitioner's trial, the victim's mother testified that, a few days after Christmas Day 2009, she confronted her father: "I drove out to their house and I asked him about it. My mother was there and my little sister Adina and her fiancé at the time. And he admitted to me that he had - - in molesting her." When asked by the prosecutor, "What did he tell you about that?," she testified: "That he had been depressed and had been on Paxil and that he just kept saying that he was sorry." PageID.216, ECF No. 7-4. While cross-examining Petitioner's wife, the prosecutor engaged her in the following exchange (PageID.225, ECF No. 7-4):

> Q  Was there a time when [the victim's mother] came over after Christmas in 2009 and confronted your husband about these allegations?
>
> A  No. She did not. No, she did not make these allegations. She did not.

Q      Okay. And, when was the last time that you saw [the victim's mother]?

A      Probably that time after Christmas.

Q      What time after Christmas?

A      Well, when she says that she made those allegations. She was in my house, but those were not the allegations that she made.

. . .

Q      You saw her - - and, why was that the last time that you saw her?

A      We didn't have a good relationship at that point. And, I used to go with my husband in the truck, he drove [a] truck. And, she didn't want to have anything to do with me.

Q      Okay. So, the reason you haven't seen her since December of 2009 is that she didn't want to have anything to do with you?

A      Yes. Well, and I moved.

In her closing arguments, the prosecutor summarized this exchange stating that Petitioner's wife "said there was no confrontation in December of 2009 when I asked her about that. But then I asked her, when was the last time you saw [the victim's mother]? And, she said, well it was that time. And, I said, which time? At which point she said they're - - they were - - there was a confrontation *but not about those allegations*. So, the last time she saw [the victim's mother] was that time." PageID.235, ECF No. 7-5 (emphasis added). During her rebuttal to defense counsel's closing argument, the prosecutor called this 2009 event a "conversation," described it as the predecessor of the taped phone call discussed earlier, and repeated that Petitioner's wife denied that "those allegations" had come up then. PageID.237-238, ECF No. 7-5. In the opinion of the undersigned, Petitioner's claim that this misrepresentation deprived him of his right to a fair trial fails because he cannot establish that this misrepresentation rendered his trial "fundamentally unfair." *See Serra*, 4 F.3d at 1355.

The critical element in the victim's mother's testimony regarding the events in December 2009 was not that there was a "confrontation" between her and her father, but that "those allegations" regarding her father's criminal sexual misconduct were discussed at that time.

- 24 -

Petitioner's wife's testified that "those allegations" had not been brought up in December 2009. The prosecutor misstated once that there had been a "confrontation" according to Petitioner's wife. However, the prosecutor correctly stated twice that Petitioner's wife denied that "those allegations" came up at that time, thereby capturing the key point of this witness's testimony. Therefore, Petitioner cannot establish that this insubstantial misrepresentation misled the jury to any extent and prejudiced Petitioner. Petitioner fails to establish that any misrepresentation fo the evidence was extensive, deliberate, or had an impact on the trial's outcome. Furthermore, the record shows that the trial judge clearly instructed the jury that the prosecutor's and defense counsel's closing statements "are not evidence." PageID.202, ECF No. 7-4. *See* PageID.238, ECF No. 7-5 ("The lawyers' statements and arguments are not evidence."); *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (holding that a "jury is presumed to follow its instructions").

Petitioner's claim of ineffective assistance of counsel fails because not raising an objection to an insignificant error does not fall outside the wide range of reasonable professional conduct and sound trial strategy and because Petitioner has not shown that, but for counsel's not raising this particular objection, the outcome of his trial would have been different. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Plaintiff claims that his constitutional rights were violated by ineffective assistance of counsel when counsel failed to investigate and call a witness that may have supported Petitioner's defense and discredited the victim. The Michigan Court of Appeals rejected this claim stating:

Defendant next argues that his counsel was ineffective for failing to call the victim's school counselor as a witness. At trial, the victim testified that she reported the sexual abuse to her school counselor. Defendant asserts that competent counsel would have contacted the counselor to investigate the counselor's potential testimony and/or called the counselor as a witness. The record, however, is silent as to whether defense counsel ever contacted the counselor about potential testimony. Since review is limited to mistakes apparent on the record, it is impossible to determine whether counsel erred by failing to contact the school counselor. Further, the decision not to call a witness, particularly a witness who apparently heard the victim speak of being sexually assaulted by defendant, falls squarely in the realm of trial strategy. Accordingly, defendant has not shown that defense counsel's performance fell below prevailing professional norms or that, but for counsel's decision, there is a reasonable probability that defendant would have been acquitted.

Michigan Court of Appeals Opinion, PageID.261, ECF No. 7-7.

The Supreme Court, restating *Strickland* relative to counsel's duties regarding conducting investigations, has rejected a "constitutional duty to investigate." *Pinholster*, 563 U.S. at 195. Instead, the Court reemphasized that, "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). Finally, the Court noted that *Strickland*, while holding that "counsel has a duty to make reasonable investigations," also gave counsel the necessary latitude "to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691).

The victim testified at trial that her uncle, Petitioner's son, walked in on her and Petitioner in the bedroom while Petitioner was still naked and she had only put on her underwear. PageID.208-209, ECF No. 7-4. The victim also testified that, a few days later her grandmother, Petitioner's wife, apologized to her. PageID.209, 211, ECF No. 7-4. The victim furthermore testified that, right before she talked to her mother about Petitioner's conduct in 2009, she talked to

her aunt living in Arizona with her three-year old daughter to warn her after the victim had learned that Petitioner and his wife planned on moving to Arizona.  PageID.209, 212, ECF No. 7-4.

The police investigator testified that he had been unable to locate these three individuals the victim had identified as potential witnesses.  PageID.220, 222, ECF No. 7-4.  Defense counsel called all three to testify for Petitioner.  All three contradicted key elements of the victim's testimony:  The victim's uncle testified that he did not walk in on Petitioner and the victim in Petitioner's bedroom.  PageID.231-232, ECF No. 7-5.  The victim's grandmother testified that she did not talk to the victim about her husband's criminal conduct or that she apologized to the victim right after this conduct.  PageID.225, ECF No. 7-4.  The victim's aunt testified that she had heard "about this all secondhand," not from the victim.  PageID.223-224, ECF No. 7-4.

The victim testified at trial that, after talking to her mother about Petitioner's criminal conduct in late 2009, she talked to her school counselor about the incident.  PageID.210, ECF No. 7-4.  Petitioner faults defense counsel for not contacting the school counselor to investigate whether the counselor's testimony could be used to impeach the victim's testimony.  PageID.24, ECF No. 1-1.  However, the record before this Court is silent as to whether defense counsel contacted the school counselor or investigated his testimony.  Petitioner asserts, but does not establish, that counsel failed to do either.

Petitioner's cites *Workman v. Tate*, 957 F.2d 1339 (6th Cir. 1992), to support his argument.  In *Workman*, the record established that counsel had never contacted two defense witnesses after defendant had told him of their whereabouts and the contents of their testimony, although they, along with defendant, were the only witnesses privy to critical information.  *Id.* at 1343.  This record evidence led the Sixth Circuit to conclude that, "[w]here counsel fails to investigate and interview promising witnesses, and therefore ha[s] no reason to believe they would

- 27 -

not be valuable in securing [defendant's] release, counsel's inaction constitutes negligence, not trial strategy." *Id.* at 1345. Petitioner cites *People v. Johnson*, 451 Mich. 115 (1996), where defense counsel had not called six exculpatory witnesses to testify. Four of them had contacted counsel themselves. Each of the six had supported defendant's motion for a new trial and an evidentiary hearing with an affidavit, swearing that each had personally witnessed that defendant did not shoot the victim. *Id.* at 118-120. The court, therefore, concluded that the defendant had been denied his right to effective assistance of counsel, explaining that "[w]e do not hold that the failure to call supporting witnesses inherently amounts to ineffective assistance of counsel. However, *on this record*, we find that the defendant has satisfied each of [the *Strickland*] requirements." *Id.* at 124 (emphasis added).

Petitioner has not provided this Court with any evidence demonstrating (a) that counsel did not contact or investigate the school counselor and (b) that the school counselor's testimony would have been exculpatory. Entertaining "the range of possible reasons . . . counsel may have had" for not calling the counselor to testify at trial (*see Pinholster*, 563 U.S. at 196), defense counsel may have discovered that the counselor's testimony would not have been favorable to Petitioner's case. Given that counsel located a number of favorable witnesses the police was unable to find and that he called them to testify for Petitioner (see PageID.236, ECF No. 7-5), it is unreasonable to assume that counsel would not have called the counselor if the counselor's testimony had fit into his overall trial strategy of discrediting the victim. Therefore, Petitioner has failed to show that counsel's decision not to call the school counselor was outside the wide range of reasonable professional conduct and trial strategy or prejudicial to Petitioner. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the

- 28 -

Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner finally claims that the cumulative effect of the foregoing errors and omissions deprived him of numerous constitutional rights. The Michigan Court of Appeals rejected this claim stating:

> Finally, defendant argues that the cumulative effect of the errors, misconduct, and ineffective assistance entitle him to a new trial. However, as outlined above, none of the complained of errors were legitimate errors, nor were any of the alleged instances of ineffective assistance legitimate instances of ineffective assistance. Accordingly, there were no errors to accumulate into any prejudicial effect, and defendant is not entitled to a new trial.

Michigan Court of Appeals Opinion, PageID.261, ECF No. 7-7.

The Sixth Circuit repeatedly has stated that cumulative error claims are not cognizable on habeas review. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002); *see also Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006); *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004); *Millender v. Adams,* 376 F.3d 520, 529 (6th Cir. 2004); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Even if cumulative error were cognizable, Petitioner's claims have been examined above and found to be without merit. Thus, Petitioner has not shown any errors that could cumulate to support his demand for a new trial. In the opinion of the undersigned, the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

The undersigned recommends that the Court deny Petitioner's application regarding Claims I, II, IV-VI on the merits.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of Petitioner's Claims I, II, IV-VI was debatable or wrong.  Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability regarding Claims I, II, IV-VI.

The undersigned recommends that the Court deny Petitioner's application regarding Claim III on procedural grounds of procedural default.  Under *Slack*, 529 U.S. at 484, when a habeas

- 30 -

petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Both showings must be made to warrant the grant of a certificate.  *Id.*  The undersigned concludes that reasonable jurists could not debate that Petitioner's Claim III was properly dismissed on the procedural grounds of procedural default.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  *Id.* Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability regarding Claim III.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


_____/s/ Timothy P. Greeley_____
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated: July 21, 2016

- 31 -